EMERSON-BRANTINGHAM IMPLE-
MENT CO. v. ROQUEMORE.
(No. 1536.)

(Court of Civil Appeals of Texas. Amarillo.
April 30, 1919. Rehearing Denied
May 20, 1919.)

1. PRINCIPAL AND AGENT ⚮189(1) — AU-
THORITY OF AGENT—PLEADING.

An exception to an architect's supplemental petition to recover for services that it did not specifically allege that the defendant owner knowingly permitted anything to be done with the intention· of inducing plaintiff to conclude that its general local manager had authority to contract for plans and specifications on its behalf, and because not alleging that plaintiff was induced to form such an erroneous opinion by any of the alleged circumstances, was not well taken, where it was alleged that defendant knew, or by the exercise of ordinary care would have known, such agent was assuming to act in such matter, and that plaintiff acting in good faith was without notice of the limitation of his authority.

2. EVIDENCE ⚮151(1) — WITNESSES ⚮
396(1) — IMPEACHMENT — UNDISCLOSED IN-
TENTION.

In an architect's action against a corporation, where neither of the letters introduced in evidence referred to any agreement that the architect should receive no compensation if the plans and specifications were not used, it was reversible error, after defendant's general local manager had been cross-examined thereon to impeach his testimony to such agreement, to refuse upon re-examination by defendant to allow witness to explain why he made no mention of it in his letters when objected to on the ground that it did not call for facts but for undisclosed intentions.

3. CONTRACTS ⚮352(2) — ARCHITECT'S AC-
TION FOR SERVICES—QUESTION FOR JURY.

In an architect's action for services evidence held sufficient to go to the jury.

4. TRIAL ⚮349(4)—REFUSAL TO SUBMIT IN
GENERAL CHARGE, MATTER SUBMITTED AS
SPECIAL ISSUE.

In an architect's action to recover for plans and specifications furnished defendant on the order of its general local agent, if a finding upon the question of the agent's authority to procure a sketch had been requested in the form of a special issue, the court should have submitted it, and where a case is submitted on special issue it was not error to refuse a general charge.

5. TRIAL ⚮194(1)—REFUSAL OF REQUESTED
CHARGE ON WEIGHT OF EVIDENCE.

Refusal of a requested written charge which was upon the weight of the evidence held not error.

6. TRIAL ⚮219 — INSTRUCTIONS — DEFI-
NITIONS—"APPARENT AUTHORITY."

In an architect's action to recover for plans and specifications furnished defendant upon the authority of his general local agent, a requested instruction should have been submitted upon the term "apparent authority," which is technical and not easily understood by laymen (citing Words and Phrases, First and Second Series, Apparent Authority.)

7. TRIAL ⚮234(7) — BURDEN OF PROOF —
· INSTRUCTIONS.

In an architect's action to recover for plans and specifications furnished defendant upon order of its agent, an instruction undertaking to inform the jury that the burden of proof was upon plaintiff as to matters alleged by him and on defendant as to special· matters pleaded by it held unobjectionable.

8. PLEADING ⚮87—SPECIAL DEFENSE—AL-
LEGATIONS AS TO AGENCY—PROOF ADMIS-
SIBLE UNDER GENERAL DENIAL.

In an architect's action to recover for plans and specifications furnished defendant at re-· quest of defendant's agent, any proof admissible under defendant's allegation that such agent was not authorized to represent it in employing the architect, and that he acted without warrant in excess of his authority, was admissible under general denial, so that this part of the answer cannot be termed a special defense.

9. PRINCIPAL AND AGENT ⚮124(2) — AP-
PARENT AUTHORITY—JURY QUESTION.

In an architect's action to recover for plans and specifications furnished under an agreement with defendant's general local agent, held, that there is sufficient evidence in the record to require, the court to submit the issue of the agent's apparent authority.

10. APPEAL AND ERROR ⚮1033(4) — TRIAL
⚮352(1) — INSTRUCTIONS — REFERRING
JURY TO PLEADINGS TO DETERMINE ISSUE—
PREJUDICIAL ERROR.

An issue submitted, which refers the jury to a pleading to determine the nature of such issue, is objectionable, although not always reversible error, particularly where in appellant's favor.

11. APPEAL AND ERROR ⚮1033(5)—HARM-
LESS ERROR — INSTRUCTIONS — BURDEN OF
PROOF.

An instruction, submitting the question of plaintiff's having proven by a preponderance of the evidence certain facts where the law only required appellee plaintiff to prove to the satisfaction of the jury, places too great a burden upon the appellee and is in appellant's favor.

12. TRIAL ⚮334—VERDICT—INTEREST.

Where an architect sued for breach of contract to pay a specific sum of money for plans and specifications, it was not necessary for the verdict to find the interest after determining the amount of the debt; interest being recovered as a matter of law when prayed for from the date when the plans and specifications were delivered.

Appeal from Potter County Court; T. W. McBride, Judge.

Suit by O. G. Roquemore against the Emerson-Brantingham Implement Company. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

⚮For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Turner & Dooley, of Amarillo, for appellant.

C. E. Gustavus, of Amarillo, for appellee.

HALL, J. Appellee, Roquemore, sued appellant, Emerson-Brantingham Implement Company, to recover the value of certain services rendered by him as an architect, under an alleged contract, whereby he was employed to prepare certain plans for a proposed building. A trial resulted in a judgment for appellee in the sum of $884.91.

Appellee, plaintiff below, alleged that appellant was a corporation existing under the laws of Illinois with an office or place of business in Amarillo, Tex.; that he was engaged in the profession of an architect in said last-named place; that appellant was conducting a general implement business, requiring the use of an office, warehouse, and place of business, and had under consideration the construction of a proper building for its use, and through its local manager and duly authorized agent, F. L. Hoyt, negotiated with appellee to prepare a sketch or outline of a building and to obtain estimates of the cost of such building; that appellee prepared such sketch or outline, and thereafter, at the special instance and request of appellant, he prepared detailed plans and specifications for such building, which were accepted and bids of contractors were requested and opened; that among other bidders was Fred Bone, who bid $29,497, being the lowest bid, and said Bone was a competent and responsible contractor; that appellant gave up the purpose of constructing the building without the consent of appellee; that in the negotiations with appellee it was agreed that appellant should pay a sum equal to 5 per cent. of the contract price of the building for the plans and specifications and for appellee to superintend the construction of the building; that the usual, customary, and reasonable compensation for plans and specifications was 3 per cent. of the price at which a building could be constructed; and that Fred Bone would have constructed such building, for the amount bid by him; and that appellant became indebted to appellee by reason of the premises in the sum of $884.91.

Appellant answered by general demurrer, special exceptions, general denial, and specially that, if any negotiations were had with F. L. Hoyt, he acted without authority to bind appellant; that appellant had never recognized, consented to, or ratified his acts; that the payment to appellee for his services was under the contract to be made only upon condition that appellant accepted and used said plans and specifications; and that appellant declined to accept and use them, but rejected the same.

By supplemental petition, appellee again alleged his employment and a contract to pay for his services, and alleged in the alternative that, if there was no contract for payment, the reasonable value of his services was as alleged, and also that appellant, for several years prior thereto, had been conducting its business in Amarillo, had purchased a lot for a building site, with the purpose of building thereon, and through its local manager and agent, F. L. Hoyt, had been conducting negotiations for the construction of the building; that, if said Hoyt was without express authority, he had apparent authority as local manager to employ appellee; that appellee was without notice of any limitations upon said Hoyt's authority, and pleaded estoppel as follows:

"(2) The defendant, several years prior to the time that plaintiff rendered the services referred to in his petition, had opened up a branch house and place of business in Amarillo, Tex., transacting a general implement business, which was conducted in rented premises. That defendant had purchased a vacant lot as a building site for its said business, with the intent and purpose of constructing a building thereon, and through its local manager and agent, F. L. Hoyt, had been making preparations and conducting some negotiations for the construction of a building, all of which was known to plaintiff. That defendant, in conducting its said business in Amarillo, had the said F. L. Hoyt in charge of its said business, and if in fact not clothed with express authority, apparently to plaintiff or any other person, the said F. L. Hoyt was defendant's general local manager and agent in handling and transacting all of defendant's business in Amarillo. That the said Hoyt, in the course of defendant's said business at Amarillo, negotiated with and employed plaintiff to prepare the plans and specifications for the building, and invited and procured bids thereon, and in all things pertaining to said matters assumed to have full and complete authority to represent defendant. That the acts and conduct of the said F. L. Hoyt reasonably appeared to plaintiff to be within the scope of his authority in the position he occupied and under the circumstances existing at the time. That plaintiff had no notice of any limitation or restrictions upon the authority of the said F. L. Hoyt, and plaintiff acted in perfect good faith in relying upon the employment by the said F. L. Hoyt and in performing the services rendered for the defendant. That defendant knew, or by the exercise of ordinary care would have known, that the said F. L. Hoyt was assuming to act for and represent defendant in reference to such matters and in no manner gave any notice of any limitations of restrictions upon his authority, in consequence of which defendant is bound and liable to plaintiff herein and in equity and good conscience should be estopped and is estopped from now denying the authority of the said F. L. Hoyt and of its liability herein, and this plaintiff is ready to verify."

Appellee further alleged that the bids were invited and procured for the construction of said building and were forwarded to and accepted by the Dallas branch office, and officers at Dallas, and were forwarded to de-

fendant at Rockford, Ill., and the plans and specifications were retained and appropriated by appellant, in consequence of which appellant is liable to appellee. Upon special issues submitted, the jury found in substance that F. L. Hoyt, assuming to act in behalf of defendant, employed the appellee to prepare and furnish detailed plans and specifications for the building; that at the time plaintiff prepared such plans and specifications he expected to receive compensation therefor even in the event such building should not be constructed; that Hoyt had either real or apparent authority to employ the plaintiff for that purpose; that Fred Bone was a competent and responsible contractor, who would have constructed the building in accordance with the plans and specifications prepared by plaintiff for the sum of $29,497. The jury further found that the plaintiff did not consent or agree that the building should not be constructed and it was in no way his fault that said building was never constructed; that appellee made no agreement with Hoyt that, if defendant should not construct the building or use the plans and specifications, plaintiff should receive no compensation for his services; that appellant is estopped from denying its liability; that reasonable compensation for his services would be $884.91, with interest.

[1] Appellant excepted to the second section of plaintiff's first supplemental petition set out above, specially because it did not allege that defendant knowingly permitted anything done with the intention that the plaintiff should be induced to conclude that Hoyt had authority to contract for plans and specifications on its behalf, and because it is not alleged that plaintiff was induced to form an erroneous opinion of Hoyt's authority by any of the alleged circumstances therein detailed. It will be seen that it is alleged that appellant knew, or by the exercise of ordinary care would have known, that Hoyt was assuming to act for it in the matter, and that appellee had no notice of any limitation upon his authority and acted in good faith in relying upon the employment by him.

Several propositions are urged under the first assignment which are not germane to it in the light of the particular exceptions urged.

[2] The second assignment is that the court erred in excluding certain testimony of the witness Hoyt. One of appellant's defenses was that Roquemore had agreed that, if the building was not constructed, he should receive no compensation for his services in preparing the plans and specifications. Roquemore had introduced two letters, both dated January 17, 1918, written by Hoyt to J. W. Kizer, of Dallas, the general manager of appellant at that place. It was shown that the letters were inclosed with the plans and specifications and the bids of several contractors. The letters state:

"It is possible that in having plans and specifications prepared and bona fide bids submitted, we have gone further than was contemplated in your letter of December 26th."

"The lowest bid we received for the construction of a 200x140 ft. one-story building, as shown on the sketch you sent us from Dallas, was $39,350, but found that in order to get accurate and dependable bids it would be necessary to have detailed plans and specifications. Accordingly, we had these prepared by Mr. O. G. Roquemore, architect of this city, and we have secured six bids from reliable contractors for the construction of the building, as shown in the plans and specifications."

Neither of the letters make any reference to the alleged agreement that Roquemore should receive no compensation if the plans and specifications were not used. As shown by the bill of exceptions, appellee had cross-examined Hoyt with reference to the alleged condition as to payment and his failure to mention it in the letters. Upon re-examination, appellant asked Hoyt to explain to the jury why he had made no mention of it in the letters. Appellee's counsel objected to the question on the ground that it did not call for a statement of facts but for undisclosed intentions and purposes on the part of the witness, for which plaintiff would be in no manner bound. The bill shows that if the witness had been permitted he would have answered:

"I did not think it necessary to explain to the company the terms of my arrangement with Roquemore concerning the plans and specifications in question, because I assumed that the company would certainly know and understand that I had not exceeded my authority by undertaking to contract for the plans and specifications in question on behalf of the company, and by the latter to pay therefor."

The purpose of the cross-examination by appellee was, of course, to impeach and in a measure cast doubt upon the positive testimony of Hoyt that under his contract with Roquemore such a condition was attached to the employment, and the failure of Hoyt to mention such condition in the letters introduced was a strong circumstance in appellee's favor. This question was considered in I. & G. N. Ry. Co. v. Locke, 67 S. W. 1082, in which a writ of error was denied, in which it was held that such an explanation was admissible. The point was again discussed at length by Judge Connor in G., C. & S. F. Ry. Co. v. Sullivan, 178 S. W. 615, who arrived at the same conclusion. See, also, Hicks v. Hicks, 26 S. W. 227. The importance of this testimony will appear when it is remembered that, if the contract was in fact as detailed by Hoyt, that no compensation should be paid Roquemore unless the plans were accepted and the building constructed, it would be a perfect defense, regardless of the authority of Hoyt to enter into such an agreement. We think this a mate-

rial and reversible error. P. & N. T. v. Winkler, 179 S. W. 691 (16). Under his counter proposition, we are cited by appellee to the case of Jefferson Fire Insurance Co. of Philadelphia v. Greenwood, 141 S. W. 319, in which the assured returned the policy to the agent, writing him to "let it alone until I see you before you make another policy." There the court held that evidence of the purpose of the insured in returning the policy was that he thought that the policy until corrected would remain in force, was inadmissible to show the applicants' undisclosed intent. In that case the rights of the parties necessarily must be determined by what was actually done, and not by the undisclosed intent or purpose of the insured.

[3] By the third assignment it is insisted that the court erred in not peremptorily instructing the jury to return a verdict for appellants. This assignment calls into review all the material evidence in the case. Since the judgment must be reversed and the cause remanded, it would not be proper for us to discuss at length the weight and sufficiency of the evidence further than to say that the correspondence between the Rockford and Dallas offices tends to show that the plans were not used, more on account of financial condition and a general request from the War Department that building activities throughout the nation cease, than from dissatisfaction with the plans and specifications which had been considered by the officers of the company at Rockford. In the absence of a direct and positive rejection of the plans and specifications, and a repudiation of Hoyt's acts, we think the evidence was sufficient to require the submission of the issues to the jury.

[4, 5] The fourth assignment is based upon the court's refusal to submit to the jury the following instruction in connection with special issue No. 3:

"In this connection, you are instructed that, if the only authority Hoyt had was to procure a sketch, and that no further or other authority was given in reference to architectural services, then Hoyt had no authority to employ the plaintiff to prepare the plans and specifications and bind that defendant to pay therefor, if he undertook so to do."

Special issue No. 3 included the question of real as well as apparent authority, while the requested charge related only to apparent authority. If a finding upon the question of Hoyt's authority to procure a sketch had been requested in the form of a special issue, the court should have submitted it; but appellant requested a general charge and not an issue, and the rule is that, where a case is submitted upon special issues, the court should not charge generally. Garrett v. Dodson, 199 S. W. 675; Southern Traction Co. v. Gee, 198 S. W. 992; La Grone v. Railway Co., 189 S. W. 99. Besides, we think

the requested charge, as written, was upon the weight of the evidence.

[6] Under the fifth assignment, appellant complains that the court refused to give, in connection with special issue No. 3, a charge defining the term "apparent authority," requested by appellant. The term "apparent authority" is technical and one not ordinarily understood by laymen, and we think the requested instruction should have been given. ; Mexican Central Railway Co. v. Goodman, 43 S. W. 580; 1 Words & Phrases (2d Series) p. 241; Schramm v. Wolff, 126 S. W. 1185.

[7, 8] Appellant excepted to the action of the court in overruling its objections to paragraph 2 of the instructions, wherein the court undertakes to inform the jury as to the burden of proof, stating that it is upon the plaintiff as to matters alleged by him and upon the defendant as to special matters of defense pleaded by it. This paragraph is unobjectionable. Plaintiff charged that Hoyt was the agent of appellant, and the first part of paragraph 2 placed the burden upon him to prove that fact. It is true that appellant alleged that Hoyt was not authorized to represent it in employing Roquemore, and that he acted without warrant and exceeded his authority. Any proof admissible under this allegation was also admissible under general denial, and this part of the answer cannot be termed a special defense. As held in Overton v. First Texas State Insurance Co., 189 S. W. 514, and J. I. Case Threshing Machine Co. v. Morgan, 195 S. W. 922, the burden of proof is upon him who charges agency, the court's charge as a whole instructed the jury correctly upon that point.

[9] We think there is sufficient evidence in the record to require the court to submit the issue of apparent authority.

[10, 11] Under the eighth assignment it is insisted that the court erred in submitting special issue No. 7, because the evidence is not sufficient to raise the issue of estoppel. Issue No. 7 is:

"Has the plaintiff proven to your satisfaction and by a preponderance of the evidence the facts alleged in the second paragraph of the second subdivision of his supplemental petition filed in this case, wherein plaintiff claims that the defendant is estopped from denying its liability to him in this suit?"

Appellant further insists that the issue is objectionable because it refers the jury to a pleading to determine the nature of the issue submitted. We think this objection is sound. It is the better practice, though not always reversible error, for the court to state the issues rather than to refer the jury to the pleadings for a statement of them. San Antonio & Aransas Pass Ry. Co. v. De Ham, 54 S. W. 395; Adams & Washam v. Southern Traction Co., 188 S. W. 275. The issue, how-

ever, is in appellant's favor, as it places a greater burden of proof upon appellee than the law requires, in that it requires appellee to prove to the "satisfaction" of the jury rather than by a mere preponderance of the evidence. Panhandle & Gulf Ry. Co. v. Kirby, 42 Tex. Civ. App. 340, 94 S. W. 173; Willis v. Chowning, 90 Tex. 617, 40 S. W. 395, 59 Am. St. Rep. 842; Moore v. Coleman, 195 S. W. 212; Gilmore v. Brown, 150 S. W. 964.

What has heretofore been said disposes of the ninth assignment.

[12] By the tenth assignment appellant urges the proposition that because the verdict of the jury in response to special issue No. 8, asking what would be reasonable compensation to plaintiff, fixed the amount at $884.91, or "3 per cent. on Fred Bone's bid," the court should not have entered judgment for any interest, and, even if interest was recoverable, the sum given is excessive. The suit was to recover the amount due under an alleged contract to pay 3 per cent. on Fred Bone's bid for services rendered. Plaintiff sued because of a breach of that part of the contract binding appellant to pay said sum. The effect of the jury's finding is that appellant owed appellee $884.91, and that this amount was due when the services were rendered. The prayer of the petition was for this amount and interest. It was not necessary for the verdict to find interest after determining the amount of the debt. Interest is recoverable as a matter of law when prayed for, and when the judgment is for services rendered for breach of a contract to pay money and debts of that character. O'Connell v. Storey, 105 S. W. 1174; G., H. & S. A. Ry. Co. v. Henry & Dilley, 65 Tex. 685; Watkins v. Junker, 90 Tex. 584, 40 S. W. 11. We think the interest was recoverable from January 11, 1918, the date when the plans and specifications were delivered to appellant's, agent Hoyt, under the contract.

For the reasons stated, the judgment is reversed, and the cause remanded.

⊂⊃For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes